# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | |
|---|---|
| Ryan Hengel, individually and on behalf of all others similarly situated, | 3:22-cv-02741 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Edgewell Personal Care Brands, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges on information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.  Edgewell Personal Care Brands, LLC ("Defendant") manufactures, markets, labels and sells SPF 50+ sunscreen in stick form to babies as Simply Protect and adults as Sport Ultra under the Banana Boat brand ("Products").




**I.     PRICE DISCRIMINATION**

2. During the past ten years, numerous states and Congress have taken steps to end what is referred to as the "Pink Tax."[1]

3. This refers to the phenomenon where substantially similar or identical personal care products are marketed to women which exceed the price of the men's version of those items.

4. According to studies, women regularly pay at least 25% more for such products, even though they are substantively identical to the male versions, save for differences in color and small amounts of one or two inactive ingredients.

5. While gender-neutral explanations have been offered as the basis for this tax, years of research have shown that the only viable explanation is based on gender discrimination.

6. Social scientists have identified variations of the "pink tax" between personal care products marketed as for children and adults.

7. Numerous explanations purport to explain such significantly different prices, including packaging formats, label statements, retailer discretion to set prices different than those recommended by the manufacturer, insurance requirements and regulatory factors.

8. This has been referred to as the "kids' tax," which imposes additional costs on parents with children.

9. The "kids' tax" exists because studies have shown that demand for children's versions of personal care products is inelastic, since parents are less sensitive to paying higher prices when they believe they are buying products specifically formulated for their children.

---

[1] The color pink is often used by marketers for women's products, although it often is used to convey gentleness and softness.

## II.   BABY AND ADULT SUNSCREENS

10. While both products are sold in a stick applicator providing UVA/UVB Protection for "Broad Spectrum SPF 50+" with "Water Resistance (80 Minutes)," the other differences listed below appear significant to a purchaser of sunscreen for a baby or small child.

|        | Baby | Adult |
|--------|------|-------|
| Name   | Simply Protect | Sport Ultra |
| Colors | White, light pink, light blue | Orange, blue |
| Oz.    | 0.50 | 1.50 |
| $      | 6.76 | 7.97 |
| Claims | 25% Fewer Ingredients<br>Made Without Oxybenzone & Parabens<br>No Added Oils & Fragrances | Reef Friendly – No Oxybenzone or Octinoxate |

11. The representations on the Baby version cause parents to expect it is specifically designed for their babies' needs.

12. This includes the prominent claim of "25% fewer ingredients," because parents of small children and babies believe the number of ingredients is inversely related to a product's safety and natural attributes.

13. That the Baby version contains "No Added Oils & Fragrances" appeals to parents of small children and babies because these ingredients are linked to skin irritation.

14. The back label of the Baby version describes it as "gentle formula [which] is non-irritating, so time spent outside with your baby can be worry free."

> Banana Boat® Simply Protect™ Baby Sunscreen SPF 50+.
> It gives you the broad spectrum UVA/UVB sun protection your baby needs with 25% fewer ingredients.* Our gentle formula is non-irritating, so time spent outside with your baby can be worry-free.

15. Defendant knows that parents prefer products containing natural and pure

ingredients, without fragrances, so that their babies' "delicate skin" will not be irritated.

### III. BABY AND ADULT VERSIONS ARE SUBSTANTIVELY IDENTICAL

16. Despite the significantly different and specific representations on the Baby version, the Products are substantively identical. yet sold at dramatically different prices.

17. This is because they contain the same active ingredients in the same relative amounts, including avobenzone (2.7%), homosalate (9.0%), octisalate (4.5%) and octocrylene 9.0%.

18. Not only do the Products contain the relative identical amounts of active ingredients, their 14 inactive ingredients are present in the same relative amounts, shown by their listing in order of predominance.

Baby: **Inactive Ingredients** Ozokerite, Caprylic/Capric Triglyceride, Ethylhexyl Palmitate, Diisopropyl Adipate, Cetyl Alcohol, Theobroma Cacao (Cocoa) Seed Butter, Dimethicone, PEG-8, Caprylyl Glycol, Silica, Lauryl PEG-8 Dimethicone, Methyl Dihydroabietate, Phenylisopropyl Dimethicone, Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer.

Adult: **Inactive Ingredients** Ozokerite, Caprylic/Capric Triglyceride, Ethylhexyl Palmitate, Diisopropyl Adipate, Cetyl Alcohol, Theobroma Cacao (Cocoa) Seed Butter, Dimethicone, PEG-8, Caprylyl Glycol, Silica, Lauryl PEG-8 Dimethicone, Methyl Dihydroabietate, Phenylisopropyl Dimethicone, Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer.

19. These inactive ingredients are listed in order below.

| Baby | Adult |
|---|---|
| Ozokerite | Ozokerite |
| Caprylic/Capric Triglyceride | Caprylic/Capric Triglyceride |
| Ethylhexyl Palmitate | Ethylhexyl Palmitate |
| Diisopropyl Adipate | Diisopropyl Adipate |
| Cetyl Alcohol | Cetyl Alcohol |
| Theobroma Cacao (Cocoa) Seed Butter | Theobroma Cacao (Cocoa) Seed Butter |
| Dimethicone | Dimethicone |

| | |
|---|---|
| PEG-8 | PEG-8 |
| Caprylyl Glycol | Caprylyl Glycol |
| Silica | Silica |
| Lauryl PEG-8 Dimethicone | Lauryl PEG-8 Dimethicone |
| Methyl Dihydroabietate | Methyl Dihydroabietate |
| Phenylisopropyl Dimethicone | Phenylisopropyl Dimethicone |
| Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer | Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer |

20. However, the Products are sold at significantly different prices.

21. For example, the Baby version is sold for $6.76 for 0.50 oz, compared to the Adult version, sold at $7.97 for 1.50 oz.

22. On a per ounce basis, the Baby version is $13.52 and the Adult version is $5.31.

23. This means the Baby version is priced over 254 percent more than the identical Adult version.

24. The price discrepancy confirms to parents that the Baby version they are buying is specifically formulated for the needs of their babies and small children.

25. No substantive or legitimate differences in the Products reasonably justifies the Baby version being priced over 250% higher than the Adult version.

IV. **CONCLUSION**

26. Defendant makes other representations and omissions with respect to the Products which are false and misleading.

27. As a result of the false and misleading representations, the Baby version is sold for more than two and a half times as much as the Adult version, promoted as specially formulated for use in babies, even though they are identical in composition.

Jurisdiction and Venue

28. Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

30. Plaintiff is a citizen of Illinois.

31. Defendant is a Delaware limited liability company with a principal place of business in Connecticut.

32. The membership of Defendant consists of Edgewell Personal Care Company, a Missouri corporation with a principal place of business in Connecticut.

33. Defendant is a citizen of Missouri and Connecticut.

34. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

35. The members of the class Plaintiff seeks to represent are more than 100, because the Products have been sold for several years, from thousands of locations including grocery stores, big box stores, drug stores, convenience stores, club stores and online, across the States covered by Plaintiff's proposed classes.

36. Venue is in this District with assignment to the East St. Louis Division because a substantial part of the events or omissions giving rise to these claims occurred in St. Clair County, including Plaintiff's purchase and/or use of the Baby version and awareness and/or experiences of and with the issues described here.

Parties

37. Plaintiff Ryan Hengel is a citizen of Scott Air Force Base, Saint Clair County,

Illinois.

38. Defendant Edgewell Personal Care Brands, LLC is a Delaware limited liability company with a principal place of business in Shelton, Connecticut, Fairfield County.

39. Defendant is one of the largest sellers of personal care products in the world, known for its sunscreen brands.

40. Defendant had a duty to ensure specific groups were not subject to price discrimination for identical products on the basis of the identity of who it was purchased for.

41. Defendant can ensure or incentivize retailers to refrain from selling the Baby version at substantially greater prices than its Adult version.

42. Plaintiff purchased the Baby version at locations including Walmart, 2608 Green Mount Commons Dr Belleville IL 62221-6742, between May 2022 and July 2022, among other times.

43. Plaintiff believed and expected the Baby version was specifically formulated and designed for the unique needs of babies and relied on the labeling and packaging, including the color, claims about having fewer ingredients, that it was fragrance and oil free and gentle for a baby's sensitive skin, which contributed to the belief its higher price compared to the Adult version was justified.

44. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Products, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through in-store, digital, audio, and print marketing.

45. Plaintiff bought the Baby version at or exceeding the above-referenced price instead

of the Adult version.

46. Plaintiff paid more for the Baby version than he would have had he known it was not specifically formulated for babies and was identical to the lower price adult version, or would not have purchased it.

47. The value of the Baby version that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

48. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Baby version over the Adult version during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, Idaho, Wyoming, Arkansas, Mississippi, North Dakota, West Virginia, Louisiana, Nebraska, Kansas, Montana and South Carolina who purchased the Baby version over the Adult version during the statutes of limitations for each cause of action alleged.

49. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

50. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

51. Plaintiff is an adequate representative because his interests do not conflict with other members.

52. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

53. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

54. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

55. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff believed the Baby version was specifically formulated and designed for the unique needs of babies, when it was not, and was substantially similar and/or identical to the Adult version.

58. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

59. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

60. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

61. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

62. Defendant intended that members of the Consumer Fraud Multi-State Class would

rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

63. The Baby version was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was specifically formulated and designed for the unique needs of babies.

64. Defendant directly marketed the Baby and Adult versions to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

65. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, a product containing natural and pure ingredients, that would be gentle and sensitive to a baby's skin.

66. Defendant's representations about the Baby version compared to the Adult version were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was specifically formulated and designed for the unique needs of babies.

67. Defendant's representations affirmed and promised that the Baby version was specifically formulated and designed for the unique needs of babies, while the Adult version, costing significantly less on a per ounce basis, could not provide those benefits.

68. Defendant described the Baby version compared to the Adult version as specifically formulated and designed for the unique needs of babies, which became part of the basis of the bargain that it would conform to its affirmations and promises.

69. Defendant had a duty to disclose, provide non-deceptive descriptions and marketing, and ensure the price at which the Baby version was sold to parents was based on its composition and costs, compared to the Adult version.

70. This duty is based on Defendant's outsized role in the market for sunscreens, custodian of the recognized and trusted Banana Boat brand.

71. Plaintiff recently became aware of Defendant's breach of the warranties for the Baby and Adult versions.

72. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the warranties for the Baby and Adult versions.

73. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

74. The Baby and Adult versions did not conform to their affirmations of fact and promises due to Defendant's actions, as neither was specifically formulated for babies or adults.

75. The Baby version was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to its promises or affirmations of fact made on its packaging, container or label, because it was marketed as if it had substantive differences of utility for use by babies compared to adults.

76. The Baby and Adult versions were not merchantable because Defendant had reason to know the particular purpose for which the Baby version was bought by Plaintiff, because he expected it was specifically formulated for babies, with fewer ingredients, and without ingredients that could irritate a baby's sensitive skin, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

77. Defendant had a duty to ensure the Products were not sold at substantially different prices based on the status of the purchasers, such as whether or not they were buying for the use of their small children or babies, which it breached.

78. Defendant had a duty to truthfully represent the Products, which included refraining from marketing the baby version as specifically formulated for babies, even though it contained the identical ingredients in the same relative amounts as the adult version, which it breached.

79. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand in sunscreens.

80. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

81. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

82. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

Fraud

83. Defendant misrepresented and/or omitted the attributes and qualities of the Baby and Adult versions, that the former was specifically formulated for babies, even though they did not differ in any ingredients or in their relative amounts of them.

Unjust Enrichment

84. Defendant obtained benefits and monies because the Baby version was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   November 26, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com